1

2

3        **UNITED STATES DISTRICT COURT**

4        **DISTRICT OF NEVADA**

5    ANA OCEGUEDA,                                    Case No. 2:15-cv-01884-JCM-EJY

6                                    Petitioner,

7         v.                                          **ORDER**

8    WARDEN JO GENTRY, et al.,

9                                    Respondents.

10       Petitioner Ana Ocegueda, a Nevada prisoner, has filed a counseled amended petition for

11   writ of habeas corpus (ECF No. 18) under 28 U.S.C. § 2254.   Currently before the court is

12   respondents' motion to dismiss (ECF No. 23).   Ocegueda has opposed, and respondents have

13   replied.  (ECF Nos. 30, 35.)  For the reasons discussed below, the motion is denied.

14   **I.      BACKGROUND**

15       **A.     State Court Judgment and Post- Conviction Proceedings**

16       Ocegueda challenges a conviction and sentence imposed by the Eighth Judicial District

17   Court for Clark County ("state court"). *State of Nevada v. Ocegueda*, C-12-286073-1.  Ocegueda

18   entered a guilty plea to two felony counts of theft.  (ECF No. 24-4.)  On May 16, 2013, the state

19   court entered a judgment of conviction sentencing her to 33–84 months for each theft count with

20   the second count running consecutively.  (ECF No. 24-12.)  In May 2019, an amended judgment

21   was entered vacating an "indigent defense civil assessment fee."  (ECF No. 26-12.)

22       Ocegueda did not appeal the original judgment but, on May 6, 2014, she filed a state

23   petition for writ of habeas corpus (ECF No. 24-19) ("state petition") seeking post-conviction relief.

24   The state petition was denied without an evidentiary hearing.  (ECF No. 25-8.)  Ocegueda filed a

25   post-conviction appeal.  (ECF No. 26-1.)  The Nevada appellate courts ordered transmission of the

26   complete trial court record for review but did not direct the parties to file appellate briefs.  (*See*

27   ECF Nos. 26-2, 26-5.)  The Nevada Court of Appeals affirmed the denial of relief, and a remittitur

28   issued on August 10, 2015.  (ECF Nos. 26-6, 26-7.)

**B. Federal Habeas Proceedings**

Ocegueda placed her original federal petition in the mail on September 28, 2015. (ECF No. 1 at 41.) The court dismissed her petition without prejudice less than a month later for failing to submit an application to proceed *in forma pauperis* or pay the standard $5.00 filing fee. (ECF No. 4.) Three years later, Ocegueda filed a counseled motion for relief from judgment.[1] (ECF No. 7.) In July 2019, the court granted her motion and reopened this case. (ECF No. 16.)

Ocegueda filed an amended petition (ECF No. 18) on September 17, 2019. She alleges two violations of her right to effective assistance of counsel under the Sixth and Fourteenth Amendments: Ground 1.1 – counsel failed to assert Ocegueda's eligibility in a gambling diversion program; and Ground 1.2 – counsel failed to object to the imposition of a higher restitution than stipulated, which the state court imposed and used to increase Ocegueda's sentence.

Respondents now move to dismiss the amended petition as untimely and unexhausted in part.

**II. DISCUSSION**

**A. Ocegueda's amended petition is timely**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") establishes a one-year period of limitations for state prisoners to file a federal habeas petition pursuant to 28 U.S.C. § 2254. The one-year limitation period, *i.e.*, 365 days, begins to run from the latest of four possible triggering dates, with the most common being the date on which the petitioner's judgment of conviction became final either by the conclusion of direct appellate review or the expiration of the time for seeking such review. 28 U.S.C. § 2244(d)(1)(A).

The judgment from which the one-year limitation period runs "is the one pursuant to which the petitioner is incarcerated," and when a state court enters an amended judgment of conviction, that is a "new judgment, starting a new one-year statute of limitations" under § 2244(d)(1)(A).

[1] In January 2017, Ocegueda initiated a new habeas action with a new federal petition. *See Ocegueda v. Neven*, 2:17-cv-00267-APG-GWF ("2017 case"). The court appointed the Federal Public Defender to represent her. (*Id.* at ECF No. 7.) Ocegueda received a stay and abeyance of the 2017 case in order to seek relief from the judgment in this earlier case. (*Id.* at ECF No. 28.) Upon reopening of this case, Ocegueda voluntarily dismissed the 2017 case. (*Id.* at ECF Nos. 30, 32.)

2

1    *Smith v. Williams*, 871 F.3d 684, 687–88 (9th Cir. 2017); *cf. Magwood v. Patterson*, 561 U.S. 320,

2    332–33 (2010) (after resentencing, the new judgment renders a new, second-in-time petition "not

3    'second or successive' " because it is the first petition challenging the new judgment).

> For AEDPA purposes, it does not matter whether the error in the judgment was
> minor or major. What matters is whether there is an amended judgment. Even if the
> judgment is not substantively changed, it constitutes a new, intervening judgment
> if the earlier judgment is amended or even if it is reissued as an amended judgment
> as in *Magwood*.

7    *Gonzalez v. Sherman*, 873 F.3d 763, 773 n.5 (9th Cir. 2017); *see also Marquez v. McDaniel*, 729

8    F. App'x 583, 584 (9th Cir. 2018) ("Where an amended or corrected judgment is entered, a prisoner

9    is held under that amended or corrected judgment.") (citing *Smith*, 871 F.3d at 688) (unpublished).

10    Here, the parties agree that Ocegueda mailed her original federal petition several days after

11    AEDPA's statute of limitations expired.  They disagree about whether the 2019 amended judgment

12    started a new one-year statute of limitations.  Respondents argue the amended judgment did not

13    renew the AEDPA deadline because her "actual sentence or sentence structure did not change, nor

14    did her restitution amount."  (ECF No. 27 at 5–6; ECF No. 35 at 2 (arguing the amended judgment

15    "involved an insignificant clerical change").)  Because the "amended judgment does not constitute

16    a 'new' judgment under AEDPA that would restart the relevant deadline," respondents assert that

17    the amended petition is untimely.  (ECF No. 27 at 6.)  Ocegueda contends that the amended

18    judgment triggered a new AEDPA limitations period, regardless of the reason for amendment.

19    (ECF No. 35 at 6–7.)  She filed her amended petition less than four months later and, thus, asks

20    the court to deny the motion.  (*Id.*)

21    Respondents' arguments are mistaken on two points.  First, Nevada law demonstrates that

22    Ocegueda's amended judgment is not merely an insignificant clerical correction.  *See, e.g.*,

23    *Gonzalez*, 873 F.3d at 772 (noting that a scrivener's error—or "recording error"—"occurs when

24    there is a discrepancy between the court's oral pronouncement of the judgment and the written

25    record of that judgment" and the written judgment "must be corrected to make those documents

26    consistent with the oral pronouncement").  "The written judgment of conviction is an essential

27    document in a criminal proceeding because it memorializes a defendant's conviction, his [or her]

28    crime, and the terms of his [or her] sentence."  *Ledbetter v. State of Nevada*, 122 Nev. 252, 265,

1    129 P.3d 671, 680 (2006) (citation omitted).  Nevada law treats administrative assessments, such

2    as an indigent defense civil assessment fee, as a required part of the sentence set forth in a judgment

3    of conviction.  *See* NRS 176.105(1)(c).[2]  The sentencing transcript shows that the judge verbally

4    imposed the "$250 indigent defense fee."  (ECF No. 24-10 at 25.)  The 2013 original judgment

5    conformed with the judge's oral pronouncement.  (ECF No. 24-12.)  In 2019, the state court

6    determined that Ocegueda retained private defense counsel for trial.  (ECF No. 24-5 at 11.)  Thus,

7    the $250 indigent defense civil assessment fee was erroneously imposed and the amended

8    judgment was entered to vacate the assessment.  (ECF No. 26-12.)  Because an assessment is a

9    necessary part of any sentence and the judge mistakenly imposed the indigent defense civil

10   assessment fee, the amended judgment did not merely correct a scrivener's error as Respondents

11   contend.  Ocegueda's sentence was changed by the amended judgment.

12        Second, respondents conflate AEDPA's procedural rules for filing a timely federal petition

13   with Nevada's procedural rules for filing a timely direct appeal or state petition.  (ECF No. 27 at 6

14   (citing *Jackson v. State of Nevada*, 133 Nev. 880, 882, 410 P.3d 1004, 1006 (Ct. App. 2017) (direct

15   appeal from amended judgment) (unpublished); *Sullivan v. State of Nevada*, 120 Nev. 537, 541–

16   42, 96 P.3d 761, 765 (2004) (amended judgment did not provide good cause to excuse untimely

17   filing of state post-conviction petition)).  Respondents rely on *Jackson* and *Sullivan* to argue that

18   the amended judgment should not provide a basis for raising claims that could—and should—have

19   been raised in earlier proceedings.  (*Id.*)  Their reliance is misplaced.  *Jackson* and *Sullivan*

20   interpret state procedural rules for direct appeals or state post-conviction petitions and the scope

21   of a prisoner's potential claims under an amended judgment, but Nevada cases are inapposite to

22   the federal procedural rules governing AEDPA's limitations period or the scope of a prisoner's

23   constitutional claims under an amended judgment.  *See Witter v. State of Nevada*, 135 Nev. 412,

---

[2] NRS 176.105 states, in relevant part:

> the judgment of conviction must set forth: … [t]he adjudication and sentence, including the date of the sentence, any term of imprisonment, *the amount and terms of any fine, restitution or administrative assessment*, a reference to the statute under which the defendant is sentenced and, if necessary to determine eligibility for parole, the applicable provision of the statute.

NRS 176.105(1)(c) (emphasis added).

1   414–15, 452 P.3d 406, 408–09 (2019) (recognizing that "federal courts have interpreted federal

2   statutes differently than [the Nevada Supreme Court has] interpreted the relevant Nevada

3   statutes").[3]

4       For purposes of AEDPA's statute of limitations, Ocegueda is now incarcerated pursuant to

5   the amended judgment and entry of the amended judgment restarted the one-year limitations

6   period. *Smith* holds, without qualification, that an amended judgment is considered a "new

7   judgment, starting a new one-year statute of limitations." 871 F.3d at 688. Because Ocegueda

8   filed the amended petition within the restarted limitations period, it is timely filed.

9       **B.    Ground 1-1 is Exhausted**

10       A state prisoner first must exhaust state court remedies on a habeas claim before presenting

11   that claim to the federal courts. 28 U.S.C. § 2254(b)(1)(A). This exhaustion requirement ensures

12   that the state courts, as a matter of comity, will have the first opportunity to address and correct

13   alleged violations of federal constitutional guarantees. *Coleman v. Thompson*, 501 U.S. 722, 730–

14   31 (1991). "A petitioner has exhausted his federal claims when he has fully and fairly presented

15   them to the state courts." *Woods v. Sinclair*, 764 F.3d 1109, 1129 (9th Cir. 2014) (citing *O'Sullivan*

16   *v. Boerckel*, 526 U.S. 838, 844–45 (1999). To satisfy the exhaustion requirement, a claim must

17   have been raised through one complete round of either direct appeal or collateral proceedings to

18   the highest state court level of review available. *O'Sullivan*, 526 U.S. at 844–45; *Peterson v.*

19   *Lampert*, 319 F.3d 1153, 1156 (9th Cir. 2003) (en banc). A properly exhausted claim " 'must

20   include reference to a specific federal constitutional guarantee, as well as a statement of the facts

21   that entitle the petitioner to relief'." *Woods*, 764 F.3d at 1129 (quoting *Gray v. Netherland*, 518

22   U.S. 152, 162–63 (1996)).

23       Fair presentation requires a petitioner to present the state courts with both the operative

24   facts and federal legal theory upon which a claim is based. *Castillo v. McFadden*, 399 F.3d 993,

25   999 (9th Cir. 2005). A petitioner may reformulate his claims so long as the substance of his

26

27   [3] In addition, respondents' arguments seemingly overlook the procedural default rule. Although the holdings of *Smith* and *Gonzalez* "likely allow more prisoners to file timely federal habeas petitions," the Ninth Circuit has reiterated that "the procedural default rule will continue to limit what claims may be brought in a federal petition" following entry of an amended judgment. *Gonzalez*, 873 F.3d at 773–74.

28

1    argument remains the same.  *Picard v. Connor*, 404 U.S. 270, 277–78 (1971).  However, a "claim

2    has not been fairly presented in state court if new factual allegations either fundamentally alter the

3    legal claim already considered by the state courts, or place the case in a significantly different and

4    stronger evidentiary posture than it was when the state courts considered it."  *Dickens v. Ryan*, 740

5    F.3d 1302, 1318 (9th Cir. 2014) (en banc) (quoting *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986);

6    *Aiken v. Spalding*, 841 F.2d 881, 883 (9th Cir. 1988) (internal quotation marks omitted)).

7            Respondents argue that Ground 1-1 of the amended petition is unexhausted.  Ground 1-1

8    raises an ineffective assistance of counsel ("IAC") claim, alleging that trial counsel failed to assert

9    Ocegueda's eligibility in a gambling diversion program.  (ECF No. 18 at 11–14.)  This ground

10   summarizes the statutory scheme of NRS Chapter 458A for the prevention and treatment of

11   problem gambling and alleges, "[a]ll counsel had to do was request a hearing under § 458A.220

12   before sentencing and the court would have given her one as required by the statute.  There is a

13   reasonable probability that the court would have ordered diversion."  (*Id*. at 13 (citing NRS

14   458A.220(2)).)  The amended petition asserts that Ocegueda's federal "claims were exhausted on

15   post-conviction."  (*Id*. at 11.)  In claim 6 of her state petition, Ocegueda raised an IAC claim

16   alleging there was substantial evidence to demonstrate the severity of her gambling addiction and

17   eligibility for the gambling treatment program under NRS Chapter 458A, but her attorney failed

18   to present such facts to the sentencing judge.[4]  (ECF No. 25-2 at 5.)

19           Respondents contend that Ground 1-1 is fundamentally different than the claim Ocegueda

20   raised in her state post-conviction proceedings and is thus unexhausted.  (ECF No. 27 at 8–9.)

21   They argue she did not allege that counsel failed to request a gambling diversion hearing as

22   provided in NRS Chapter 458A or that she would have received a lighter sentence if she had

23   proceeded under the rules outlined in NRS Chapter 458A.  (*Id.*)  Respondents urge the court to

---

24   [4] Respondents' motion asserts that Ground 1-1 is also based in part on claim 4 of the state petition.  (ECF
25   No. 27 at 8 (arguing that claim 4 "commented about the existence of a gambling diversion program, but
     failed to implicate any [IAC] claim") (citing Ex. 19, ECF No. 24-19).)  However, claim 4 involves the
26   amount of restitution and *does not* discuss a gambling diversion program.  (ECF No. 24-19 at 11.)  Instead,
     claim 3 expressly discusses the diversion program for treatment of problem gambling, codified at NRS
27   Chapter 458A, as wells as counsel's purported deficient performance for failing to inform the judge of the
     extent of her condition.  (*Id*. at 8–11.)  Ocegueda's opposition relies on claim 6 for exhaustion purposes
28   (ECF No. 30 at 16–17); thus; an analysis of claims 3 or 4 are not required.

1    find these are separate IAC theories, rendering Ground 1-1 unexhausted.  (ECF No. 35 at 6.)

2         Ocegueda asserts that her IAC claim based on counsel's failure to inform the sentencing

3 judge of her qualification for the gambling diversion program necessarily complained that counsel

4 did not request a hearing pursuant to NRS Chapter 458A since a hearing is required to participate

5 in the program.  (ECF No. 30 at 16–17.)  She argues she did not fundamentally alter the legal claim

6 by explaining that a hearing is required under NRS Chapter 458A to take part in the program—

7 federal counsel simply provided context by explaining the statutory process.  She therefore

8 maintains Ground 1-1 is exhausted.

9         The court finds that Ground 1-1 is exhausted.  Respondents correctly point out that

10 exhaustion must be satisfied for each IAC claim, meaning that a petitioner must have presented

11 the operative facts and a specific legal theory as an independent constitutional claim.  *Kelly v.*

12 *Small*, 315 F.3d 1063, 1068 n.2 (9th Cir. 2003), *overruled on other grounds by Robbins v. Carey*,

13 481 F.3d 1143 (9th Cir. 2007). Ocegueda did just that.  Both her state IAC claim and Ground 1-1

14 expressly alleged that she was eligible for the gambling diversion program under NRS Chapter

15 458A but counsel failed to present such facts to the sentencing judge.  She did not present an

16 entirely new IAC theory or fundamentally alter the claim by explaining the statutory process for

17 requesting participation in the program or specifying that counsel should have requested a hearing.

18 *See Poyson v. Ryan*, 879 F.3d 875, 895–96 (9th Cir. 2018) (further facts in support of an IAC claim

19 do not render a claim unexhausted "so long as those facts do not fundamentally alter the legal

20 claim already considered by the state courts") (citation and internal quotation marks omitted);

21 *Murray v. Williams*, 2:12-cv-02212-RFB-VCF, 2019 WL 4247142, at *6–7 (D. Nev. Sept. 6, 2019)

22 (additional allegations did not present a new or different IAC claim or fundamentally alter the legal

23 claim but rather were further examples of counsel's unprofessional conduct).  Accordingly,

24 Ground 1-1 is exhausted.

25 ///

26 ///

27 ///

28 ///

**III.   CONCLUSION**

In accordance with the foregoing, **IT IS THEREFORE ORDERED**:

1. Respondents' motion to dismiss (ECF No. 23) is DENIED.

2. Respondents must file an answer to the amended petition by **January 25, 2021**.

3. Petitioner will have 60 days following service of the answer in which to file a reply.

DATED December 11, 2020.

_____
JAMES C. MAHAN
UNITED STATES DISTRICT JUDGE

8