# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

ANA OCEGUEDA,

                        Petitioner,

v.

WARDEN NEVEN, et al.,

                        Respondents.

Case No. 2:15-cv-01884-JCM-EJY

**ORDER**

     Ana Ocegueda, a Nevada prisoner who pleaded guilty to two counts of theft and was sentenced to two consecutive terms of 33-84 months, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. (*See* ECF Nos. 18, 26-12.) This matter is before this court for adjudication of the merits of Ocegueda's amended petition, which alleges that counsel failed to assert her eligibility for a gambling diversion program and to object to the imposition of a higher restitution than stipulated. (ECF No. 18.) This court denies Ocegueda's habeas petition, denies her a certificate of appealability, and directs the clerk of the court to enter judgment accordingly.

## I.    BACKGROUND

     Ocegueda was charged with 33 counts of theft and 2 counts of unlawful use of computers in state justice court. (ECF No. 24-2 at 3.) During Ocegueda's waiver of her preliminary hearing, her trial counsel informed the state justice court that (1) Ocegueda "would be pleading guilty to two category B thefts both [with] a one to ten" year sentence, (2) "[t]he restitution w[ould] be split between the two counts, and the amount of restitution is $366,449," and (3) "[t]he State retain[ed] the right to argue [under the plea agreement] however there [was] no opposition to concurrent time between the two counts." (ECF No. 24-1 at 3.)

The State filed an information in state district court charging Ocegueda with two counts of theft from her employer, N.A.C. Electric Inc., alleging in count 1 that she "was writing checks to herself, covering it up in quick books as having been written to a vendor payee in the total amount of $102,509.00, by issuing and putting direct deposits into her personal account and adding additional money to her paycheck in the total amount of $80,880.43" and in count 2 that she "opened an Office Depot Credit Card in the Company's name total amount $141,503.00," wrote "two (2) fraudulent checks on the personal account of Tom Clift total amount $6500.00," wrote "two (2) fraudulent checks on the person account of Jani Clift total amount $4000.00," and made "unsubstantiated charges in the amount of $41,950.00." (ECF No. 24-3 at 3–4.)

Ocegueda signed a guilty plea agreement, which outlined the terms of the agreement as follows: "The State agrees to retain the right to argue at rendition of sentence and has no opposition to running the time concurrent between the counts. The Defendant agrees to stipulate to restitution in the amount of $366,844.13." (ECF No. 24-4 at 2.) Ocegueda's trial counsel reiterated the plea agreement at her arraignment: "The State retains the right to argue at time of sentencing; however, they're not opposing the two counts run concurrent with each other, and we have agreed to the amount of restitution in the amount of $366,844.13." (ECF No. 24-6 at 3.) Ocegueda pleaded guilty to the charges. (*Id.* at 4.)

At Ocegueda's sentencing hearing, the state argued, in part, that "[t]he motivation here is greed. I don't believe it's . . . solely gambling. There's going to be a lot of expenditures, I believe the victims will speak about, for incidentals, luxury goods, car payments. Some of it definitely is gambling but the overall motivation here is greed." (ECF No. 24-10 at 5.) The state also noted that the minimum amount of money stolen was $366,000 and that the parties stipulated to restitution in that amount "to not have to fight about how much money was actually stolen" and because

"NAC Electric is fully aware that they're unlikely to recover very little money in this case." (*Id.* at 5, 7.) When given a chance to address the state district court, Ocegueda stated, *inter alia*, that she had "no excuses what [she] did for [her] gambling addiction 'cause it's only solely [her] fault." (*Id.* at 8.)

Ocegueda's trial counsel then made, *inter alia*, the following comments: (1) "[a]t th[e] time [the thefts occurred, Ocegueda's] gambling addiction . . . was controlling her life," (2) he met with Dr. Robert Hunter, "the most renowned expert on gambling addiction in the United States," and submitted two letters from Dr. Hunter to the state district court on Ocegueda's behalf, (3) Ocegueda "completed a six-week intensive out-patient gambling course," (4) Ocegueda "continues to go to very intensive out-patient [counseling] through Dr. Hunter" and to Gamblers Anonymous, (5) he "looked at [Nev. Rev. Stat. § 458(a), which established a gambling diversion program in Nevada] pretty carefully, and [he and Ocegueda] didn't ever come [to court] trying to get her sentenced to some type of diversion," rather they came to court "with some things that [they] read in that statute that [he] think[s] are helpful that could cause the Court to maybe consider something besides prison," (6) he was not offering the gambling addiction as an excuse, but rather "offering it as reality," and (7) Ocegueda will not be able to pay back the stipulated restitution. (ECF No. 24-10 at 10–14.)

Following Ocegueda's trial counsel's sentencing argument, JoAnna Jordan, the daughter of the owners of N.A.C. Electric Inc., spoke and made, *inter alia*, the following comments: (1) her parents asked her to speak on their behalf, (2) "even though Ms. Ocegueda pled to $366,844.13 of theft, since that time the total amount of theft . . . reached $506,000 with new things still coming every day," (3) "[i]n the past few months, [she and her family have] learned of yet another credit card" and "received another bill from the IRS for taxes and penalties [they] owe because Mrs.

Ocegueda stole the money that was supposed to be used to pay the weekly payroll taxes for the last quarter of 2011," (4) Ocegueda used a Home Depot credit card to buy items "for the inside of her house from paint to tile to light fixtures to toilet paper to household supplies," (5) she and her family "have over $200,000 worth of credit card slips" showing that Ocegueda fraudulently used the credit cards "for her regular nail appointment[s], hair appointments, salon treatments, personal waxing, . . . [her] shoe obsession, Sephora, her OBGYN, the Home Shopping Network, monthly cell phone bills, monthly bills for Nevada Power, Cox, ADT, her monthly car insurance, even [her] car payments," (6) regarding Ocegueda's fraudulent use of credit cards on restaurant bills, Jordan explained "that the majority of [the people] in the courtroom won't even come close to going to the amount of restaurants [Ocegueda] and her family ate at and charged on [Jordan's] parents' charge cards before we all die," and (7) she thought Ocegueda "should have claimed shopping addiction rather than a gambling addiction" and believed Ocegueda claiming a gambling addiction was "her taking advantage of a situation[,] . . . know[ing] that gambling is a sympathetic problem." (ECF No. 24-10 at 15, 17, 21.)

Before sentencing Ocegueda to two consecutive terms of 33-84 months, the state district court stated that Ocegueda "is a cold, calculated woman," who deserves, as Ocegueda said, "'what is coming to [her].'" (ECF No. 24-10 at 24–25.) The state district court also ordered restitution in the amount of $506,000. (*Id.* at 25.)

Ocegueda did not file a direct appeal, but she sought post-conviction relief. (ECF No. 24-19.) Following the filing of her state habeas petition and the state's response, Ocegueda "add[ed] grounds" to her petition. (ECF No. 25-2.) The state responded to Ocegueda's additional grounds, arguing that they were not cognizable. (ECF No. 25-6.) The state district court "denied [Ocegueda's petition] for the reasons set forth by the State" and asked the state to prepare the

order. (ECF No. 25-7; *see also* ECF No. 25-8.) The Nevada Court of Appeals affirmed the denial. (ECF No. 26-6.)

## II.     GOVERNING STANDARDS OF REVIEW

### A.     Antiterrorism and Effective Death Penalty Act ("AEDPA")

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under AEDPA:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be

more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409–10) (internal citation omitted).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

### B.  Standard for effective-assistance-of-counsel claims

In *Strickland v. Washington*, the Supreme Court propounded a two-prong test for analysis of claims of ineffective assistance of counsel requiring the petitioner to demonstrate (1) that the attorney's "representation fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. 668, 688, 694 (1984). A court considering a claim of ineffective assistance of counsel must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Additionally, to establish prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable

effect on the outcome of the proceeding." *Id.* at 693. Rather, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

Where a state district court previously adjudicated the claim of ineffective assistance of counsel under *Strickland*, establishing that the decision was unreasonable is especially difficult. *See Richter*, 562 U.S. at 104–05. In *Richter*, the United States Supreme Court clarified that *Strickland* and § 2254(d) are each highly deferential, and when the two apply in tandem, review is doubly so. *Id.* at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (internal quotation marks omitted) ("When a federal court reviews a state court's *Strickland* determination under AEDPA, both AEDPA and *Strickland*'s deferential standards apply; hence, the Supreme Court's description of the standard as doubly deferential."). The Supreme Court further clarified that, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

## III.   DISCUSSION

### A.   Ground 1.1—failure to assert eligibility in a gambling diversion program

In ground 1.1, Ocegueda alleges that trial counsel violated her Sixth and Fourteenth Amendment rights to the effective assistance of trial counsel by failing to assert her eligibility for a gambling diversion program. (ECF No. 18 at 11.)

#### 1.   Nevada law

Nev. Rev. Stat. § 458A.210 provides that "a person with an addictive disorder related to gambling who has been convicted of a crime and who committed the crime in furtherance or as a result of problem gambling is eligible to elect to be assigned by the court to a program for the treatment of problem gambling." And Nev. Rev. Stat. § 458A.220(1) provides that "[i]f the court

. . . [h]as reason to believe that" the defendant "is a person with an addictive disorder related to gambling" and "committed the crime in furtherance or as a result of problem gambling" and also "[f]inds that the person is eligible to make the election as provided in NRS 458A.210," it "shall hold a hearing before it sentences the person to determine whether or not the person committed the crime in furtherance or as a result of problem gambling and whether or not the person should receive treatment under the supervision of a qualified mental health professional." The state "may present the court with any evidence concerning whether the person committed the crime in furtherance or as a result of problem gambling and the advisability of permitting the person to make the election." *Id.*

Under Nevada law, a "district court's decision to allow an offender to enter a program of treatment is analogous to the decision to sentence an offender to probation and therefore is a decision that properly falls within the discretion of the judiciary." *Stromberg v. Second Judicial District Court*, 125 Nev. 1, 8, 200 P.3d 509, 513 (2009). And "[a] district court is vested with wide discretion regarding sentencing." *Denson v. State*, 112 Nev. 489, 492, 915 P.2d 284, 286 (1996); *Chavez v. State*, 125 Nev. 328, 348, 213 P.3d 476, 490 (2009) ("This court has consistently afforded the district court wide discretion in its sentencing decision.").

## 2.   Review

Ocegueda argues that this court should review this ground *de novo* because the Nevada Court of Appeals failed to decide it. (ECF No. 40 at 5.)

In ground 6 of her supplemental state habeas petition, Ocegueda included a claim that there was substantial evidence to demonstrate the severity of her gambling addiction and eligibility for the gambling treatment program, but counsel failed to present such facts to the sentencing judge. (ECF No. 25-2 at 5.) The state district court found this claim not cognizable.

(ECF No. 25-8 at 4.) The Nevada Court of Appeals did not directly decide the instant issue on appeal. (*See* ECF No. 26-6.) Instead, it only discussed a somewhat related claim: "Ocegueda['s] assert[ion that] her counsel was ineffective for failing to ensure the sentencing court was aware of her gambling addiction and treatment for that addiction." (*Id.* at 4.)

This court presumes that the Nevada Court of Appeals adjudicated Ocegueda's instant claim on the merits. *See Johnson v. Williams*, 568 U.S. 289, 293 (2013) ("[W]hen a state court issues an order that summarily rejects without discussion *all* the claims raised by a defendant, including a federal claim that the defendant subsequently presses in a federal habeas proceeding, the federal habeas court must presume (subject to rebuttal) that the federal claim was adjudicated on the merits." (Emphasis in original)). Ocegueda fails to adequately rebut this strong presumption, as this court is not convinced that the Nevada Supreme Court neglected to consider it out of sheer inadvertence, as she argues. *See Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits *in the absence of any indication or state-law procedural principles to the contrary*." (Emphasis added)); *Johnson*, 568 U.S. at 302–03 ("If a federal claim is rejected as a result of sheer inadvertence, it has not been evaluated on the intrinsic right and wrong of the matter.").

Indeed, the Nevada Court of Appeals' discussion of Ocegueda's similar claim—counsel's alleged failure to ensure that the state district court knew about her gambling addition—demonstrates it acknowledged Ocegueda's argument about her gambling addiction, the role it played in her crimes, and counsel's deficiency related thereto. This negates a finding that the Nevada Court of Appeals carelessly overlooked the instant claim, which stems from similar facts.

1  As such, *de novo* review is not appropriate.[1] Rather, lacking a reasoned state-court decision, this

2  court "determine[s] what arguments or theories supported or . . . could have supported, the state

3  court's decision." *Richter*, 562 U.S. at 102; *Carter v. Davis*, 946 F.3d 489, 502 (9th Cir. 2019).

4          **3.      Analysis**

5          It is true that Ocegueda's counsel did not assert her eligibility for a gambling diversion

6  program pursuant to Nev. Rev. Stat. § 458A. However, counsel stated at the sentencing hearing

7  that he "looked at the statute pretty carefully" and purposefully "didn't ever come [to court] trying

8  to get her sentenced to some type of diversion" program. (ECF No. 24-10 at 13.) This decision

9  appears to have been strategic because diversion pursuant to Nev. Rev. Stat. § 458A is only

10  allowed for those who have "committed the crime in furtherance or as a result of problem

11  gambling." Nev. Rev. Stat. §§ 458A.210, 458A.220(1). In Ocegueda's case, the state argued at the

12  sentencing hearing that although Ocegueda spent "some" of the money she stole to gamble, there

13  were "a lot of expenditures . . . for incidentals, luxury goods, car payments." (ECF No. 24-10 at

14  5.) Similarly, Jordan stated at the sentencing hearing that Ocegueda used the stolen money to fix

15  up her home, get her hair and nails done, go to salons for treatments and waxing, purchase shoes

16  and beauty supplies, shop for personal goods, eat at restaurants, and pay for various bills, including

17  her cell phone, power, car insurance, and vehicle. (ECF No. 24-10 at 17, 21.) Based on (1) these

18  statements and (2) Nev. Rev. Stat. § 458A.220(1) requiring the state district court to find that

19  Ocegueda "committed the crime in furtherance or as a result of problem gambling" in order for

20  her to be eligible for the gambling diversion program, Ocegueda fails to demonstrate that trial

21  counsel's "representation fell below an objective standard of reasonableness" in not asserting her

22

23  _____

[1] Alternatively, even if this court reviewed ground 1.1 *de novo* because it appears to be the only claim not addressed by the Nevada Court of Appeals, Ocegueda still fails to demonstrate deficiency or prejudice as provided below.

alleged eligibility for the program. *Strickland*, 466 U.S. at 688 (explaining that "[j]udicial scrutiny of counsel's performance must be highly deferential"); *see also Correll v. Ryan*, 539 F.3d 938, 948 (9th Cir. 2008) ("[U]nder *Strickland*, we must defer to trial counsel's strategic decisions.").

Additionally, due to (1) the state and Jordan's statements regarding Ocegueda's spending of the stolen money on various items and services—and only "some" on gambling—and (2) the state district court having discretion to sentence Ocegueda's to the gambling diversion program if counsel would have requested a hearing, Ocegueda fails to demonstrate a reasonable probability that the result of her sentencing would have been different if counsel had asserted her alleged eligibility for the gambling diversion program. *Strickland*, 466 U.S. at 694; *Djerf v. Ryan*, 931 F.3d 870, 881 (9th Cir. 2019) ("*Strickland* prejudice is not established by mere speculation."); *Stromberg*, 125 Nev. at 8, 200 P.3d at 513; *Denson*, 112 Nev. at 492, 915 P.2d at 286.

Thus, based on the record, the Nevada Court of Appeals' denial of this ground constituted an objectively reasonable application of federal law and was not based on an unreasonable determination of the facts. Ocegueda is not entitled to federal habeas relief on ground 1.1.

**B.    Ground 1.2—failure to object to the imposition of higher restitution**

In ground 1.2, Ocegueda alleges that trial counsel violated her Sixth and Fourteenth Amendment rights to the effective assistance of trial counsel by failing to object to the imposition of a higher restitution than stipulated, which the court imposed and used to increase her sentence. (ECF No. 18 at 14.)

**1.    Nevada law**

Nevada's theft statute dictates that "the court shall order the person who committed the theft to pay restitution." Nev. Rev. Stat. § 205.0835(5). "The amount involved in a theft shall be deemed to be the highest value, by any reasonable standard, of the property or services which are

obtained." Nev. Rev. Stat. § 205.0834. "Value" is defined as "the market value of the property or services at the time of the theft." Nev. Rev. Stat. § 205.0831. And "[t]he trier of fact shall determine the value of all other property whose value is not readily ascertainable, and may, in making that determination, consider all relevant evidence, including evidence of the value of the property to its owner." *Id.*

Nevada law affords the victim of a crime the opportunity, at a sentencing hearing, to "[r]easonably express any views concerning the crime, the person responsible, the impact of the crime on the victim and the need for restitution." Nev. Rev. Stat. § 176.015(3)(b). The court shall then "set an amount of restitution for each victim of the offense" if restitution is appropriate. Nev. Rev. Stat. § 176.033(1)(c). "The sentencing proceeding is not a second trial and the court is privileged to consider facts and circumstances which clearly would not be admissible at trial." *Silks v. State*, 92 Nev. 91, 93–94, 545 P.2d 1159, 1161 (1976). And "[s]o long as the record does not demonstrate prejudice resulting from consideration of information or accusations founded on facts supported only be impalpable or highly suspect evidence, this court will refrain from interfering with the sentence imposed." *Id.*

### 2.   State court determination

In affirming the denial of her post-conviction petition, the Nevada Court of Appeals held:

> Ocegueda asserted her counsel was ineffective for failing to object to the imposition of $506,000 in restitution. Ocegueda fails to demonstrate her counsel's performance was deficient or resulting prejudice. Ocegueda's counsel asserted at the sentencing hearing that Ocegueda should only have to pay approximately $366,000 in restitution. Ocegueda fails to demonstrate a reasonable probability of a different outcome had counsel made further arguments regarding restitution as one of the victims testified that the losses to the business totaled $506,000 and the sentencing court agreed to impose restitution in that amount. *See* NRS 176.033(1)(c); *Chavez v. State*, 125 Nev. 328, 348, 213 P.3d 476, 490 (2009) (explaining that a district court has wide discretion when imposing sentence). Therefore, the district court did not err in denying this claim.

1  (ECF No. 26-6 at 3–4.)

2      **3.     Review**

3      Ocegueda argues that this court should review this ground *de novo* because the Nevada

4  Court of Appeals' decision was based on an unreasonable determination of the facts and,

5  alternatively, was an unreasonable application of *Strickland*. (ECF No. 40 at 17.) This court

6  agrees with Ocegueda's former argument.

7      The Nevada Supreme Court stated that Jordan "testified" about the business total losses.

8  (ECF No. 26-6 at 4.) However, this is inaccurate: Jordan was noticed as a "speaker" and was not

9  sworn prior to her statement. (*See* ECF No. 24-10 at 14–15.) Accordingly, because the Nevada

10  Court of Appeals' decision was based on an unreasonable determination of the facts, this claim

11  will be reviewed *de novo*. *See Panetti v. Quarterman*, 551 U.S. 930, 948 (2007) ("As a result of

12  [the state court's] error, our review of petitioner's underlying . . . claim is unencumbered by the

13  deference AEDPA normally requires"); *Hurles v. Ryan*, 752 F.3d 768, 778 (9th Cir. 2014) ("If

14  we determine, considering only the evidence before the state court, that . . . the state court's

15  decision was based on an unreasonable determination of the facts, we evaluate the claim de

16  novo.").

17      **4.     Analysis**

18      Although the state district court ordered Ocegueda to pay an additional $139,155.87 in

19  restitution over the amount stipulated, Ocegueda fails to demonstrate that counsel acted

20  deficiently in not objecting to the higher restitution or resulting prejudice. *Strickland*, 466 U.S.

21  at 688, 694. The $506,000 in restitution was supported by Jordan's statements at the sentencing

22  hearing in which she spoke on behalf of her parents, the owners of N.A.C. Electric Inc. Indeed,

23  Jordan stated that she was the "current bookkeeper for NAC Electric, and [she had] been the one

beside [her] father and mother since the first day these crimes were discovered." (ECF No. 24-10 at 15.) Based on this record, Ocegueda fails to demonstrate that, pursuant to Nevada law, Jordan's statements as to the aggregate theft amount amounted to irrelevant or highly suspect evidence such that the state district court unreasonably relied on her statements in setting the restitution amount. Nev. Rev. Stat. §§ 205.0834, 205.0831; *Silks*, 92 Nev. at 93–94, 545 P.2d at 1161; *see also Walch v. State*, 112 Nev. 25, 34, 909 P.2d 1184, 1189–90 (1996) (determining that "the amount of restitution ordered was not arbitrary, but [was] supported by the record"). For this reason, Ocegueda fails to demonstrate that counsel's "representation fell below an objective standard of reasonableness" in not objecting to the imposition of the higher restitution or that, if he had, "there is a reasonable probability that . . . the result of [her sentencing] would have been different." *Strickland*, 466 U.S. at 688, 694. And contrary to Ocegueda's contention that the state district court used the imposition of a higher restitution than stipulated to increase her sentence, the state district court appears to have based its increased sentence on Ocegueda's actions generally, rather than the amount of her thefts, as it stated that Ocegueda was "a cold, calculated woman" who committed "a calculated and sophisticated theft of property." (ECF No. 24-10 at 24.)

Ocegueda is not entitled to federal habeas relief on ground 1.2.

## IV.    CERTIFICATE OF APPEALABILITY

This is a final order adverse to Ocegueda. Rule 11 of the Rules Governing Section 2254 Cases requires this court issue or deny a certificate of appealability (COA). This court has sua sponte evaluated the remaining claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864–65 (9th Cir. 2002). Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial

showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether this court's procedural ruling was correct. *Id.*

Applying these standards, this court finds that a certificate of appealability is unwarranted.

**V.     CONCLUSION**[2]

In accordance with the foregoing, **IT IS THEREFORE ORDERED**:

1.     The petition (ECF No. 18) is DENIED.

2.     A certificate of appealability is DENIED.

3.     The clerk of the court is direct to enter judgment accordingly and close this case.

Dated:  April 25, 2022

_____
JAMES C. MAHAN
UNITED STATES DISTRICT JUDGE

---

[2] Ocegueda requests that this court conduct an evidentiary hearing. (ECF No. 18 at 15.) Neither further factual development nor any evidence that may be proffered at an evidentiary hearing would entitle Ocegueda to relief. <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007) ("In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, it true, would entitle the applicant to federal habeas relief."). Ocegueda's request is denied.